We have four argued cases this morning which are number 17-20-60, 17-20-61, 18-52, and 18-50-15-04. And by order yesterday we reordered the argument because of the overlap among the four cases and have asked the parties to address these in three segments. So let's turn first to the first segment, Mr. Herrera. Good morning, Your Honors, and may it please the Court. My name is Frederick Herrera. I represent the United States Capitol Police in this negotiability action. Pursuant to the Court's instruction, I will be covering first why this Court has jurisdiction over a petition for review of a negotiability dispute, followed by why the Office of Compliance was incorrect as a matter of law in finding that three union proposals were negotiable. Let me make a comment at the outset, which really applies to all three of these cases, is that what we have is a situation in which these provisions under Title II have incorporated various provisions relating to the FLRA that appear in Title V. And the result of that is that it creates a certain amount of confusion to try to parse how to address what parts are incorporated and what parts are replaced by Title II. And that comes up in connection with the jurisdictional issue here. So why don't you go ahead and try to address that? Certainly. And you're right. The Capitol Police has been wrestling with this issue for 20 years since the Congressional Accountability Act came out. And we look at the various provisions to try and make sense out of the statute and how it all works. I think in our presentation, we came up with a way that it actually does work in the statute and what Congress's intent was, because we typically will start with the Congressional Accountability Act. And what was Congress trying to do with that statute? So we start with respect to the jurisdictional issue under 1407A1D. Just to clear out a bit of underbrush, I assume your reference to A1A was just a mistake. That's correct. So 1407A1D provides that the general counsel or respondent before the board who files a petition under Section 1351C3 of this title has jurisdiction before the federal circuit. There's no dispute from the Office of Compliance that we are a respondent to the petition. So that then takes us to the next section of the statute. Well, then your problem is that C3 refers to a respondent to a complaint in that section. Correct. So let's go... It uses the word complaint seemingly to apply to an unfair labor practice. So let's take a look at 1351, because that one takes us a little bit of time to unpack. Under 1351, the provision says that except for matters referred to in paragraphs 1 and 2 of Section 7123A... We're now reading from C3. That's C3. The general counsel or the respondent to a complaint is... A complaint. Yeah. If aggrieved by a final decision of the board under paragraph 1 or 2 of this subsection, may file a petition for judicial review in the United States Court of Appeals for the federal circuit pursuant to Section 1407. So it refers back to the statute giving this court jurisdiction. Now, let's take that slowly. The first sentence says that except for matters referred to in paragraphs 1 and 2 of Section 7123. Those provisions are found under the C1 provision of the statute. So you'll find, for example, 7123A deals with arbitration wards under 7122. And 7123B or 2 deals with appropriate unit determinations under 7112 of the FLRA statute. So in looking at the statute of the provisions, C1 has to have some meaning here. The negotiability dispute arises under 7117 under C1. When that negotiability dispute arises, Congress provided a specific process that the Office of Compliance was required to follow. So the first step was that the matter shall be submitted to the Board of Directors of the Office of Compliance. Once they've done that, the next sentence says the Board shall refer any matter under this paragraph to a hearing officer for decision pursuant to B through H. And this is the... Of 1405. Of 1405. Right, which repeatedly refers to a complaint. Correct. There are six references to a complaint. And, again, this is as Congress is looking at the statute and putting it together, it envisioned that this would be processed as a complaint. Under C1... Let me just ask you to back up for a moment. Sure. In terms of what Congress might be seeking to achieve here, the Compliance Authority's position is that Congress didn't want to have these negotiability petitions made judicially reviewable. The only way you can get judicial review, as I understand the position, is to refuse to comply, and then there would be an enforcement proceeding, and you can argue in the enforcement proceeding that the negotiability dispute should be resolved in your favor, right? Right. Is there anything that sheds any light on whether Congress wanted to allow the employer to petition for judicial review or to require that the employer wait and refuse to comply and have the proceeding come up as an enforcement proceeding? Yes, I think the indication of that is from this judicial review section of the Congressional Accountability Act. Because what Congress said there was that a final decision of the board under Paragraph 1 or 2 to read the statute the way that the Office of Compliance would read it would be to not have a Paragraph 1, because all of the ULP actions would originate under Paragraph 2. Congress knew what it was doing, because if you look at the first sentence, they used Paragraph 1 and 2 of Section 7123. So clearly Congress envisioned two different processes that go forward. What they can't answer is what does Paragraph A1 mean and who is a respondent to a complaint? It can only be a negotiability dispute that's processed under the process that Congress gave for the complaint under B through H of Section 405. Can I ask you this? The other thing that I guess I was thinking about, and this may be certainly something I'll want the Compliance Board or the Compliance Office to address. If a negotiability petition that goes through as if requested, you generally have to do the hearing officer of 1405 to get a decision in 1405G and then reviewed by the board in 1406E, those are all complaints. I guess it's not clear to me that if this isn't a complaint that we have any jurisdiction under the enforcement section, which is expressly about enforcing something that goes through the 1405 complaint procedure. So let's look at the policy behind negotiability. I'm really, really focused on text. Just to be really clear, this feels to me like a very helpful point to you. It is. So can you tell me if there's something wrong with this? This has to be a complaint where their enforcement action doesn't belong here. That is correct. And the fundamental reason, you start with what a negotiability petition is or what a negotiability dispute is. The agency has a duty to bargain over any condition of employment unless it's inconsistent with law. And who's making the decision of whether it's inconsistent with law? Under the Congressional Accountability Act, that authority has been given to this court to determine inconsistent with law, conflicts with statutory provisions, constitutional arguments. Again, to read the statute the way they're presenting it, it would mean the Office of Compliance is given the sole authority to interpret law and statute. No, that's not the way they're reading it because they say these disputes couldn't be brought before the court. While you're refusing to comply with the negotiability decision and requiring them to resort to enforcement action, in that action you're able to raise any defenses, including that the item was not negotiable. Sure. So, I mean, they're not trying to deprive you of judicial review. The only question is what's the mechanism here? But again, I'd start with what did Congress say? It said paragraph one or two. To read the statute the way they're presenting it, you don't need paragraph one. Let me raise another issue here. Look at 7117 of Title V, which relates to negotiability disputes with the FLRA. And there, a hearing is discretionary, right? And then you look at 7118 and it compels a hearing. So why do you read this section C1 as saying that there shall always be a hearing under 1405? Why isn't the better reading of that that there shall be a hearing pursuant to 1405 when a hearing is required and that by the adoption of 7117 and 7118 that sometimes a hearing is discretionary and sometimes it's mandatory? Your Honor, because Congress chose to use the word shall. I don't think that answers the question. You could read the sentence as saying when a hearing is required or ordered, the board shall refer to a hearing officer. But, Your Honor, that would be reading words not in statute. No, not really. Because the statute... We're just trying to make sense out of an ambiguous statute. So let's... It doesn't say, that section doesn't say the board shall hold a hearing. It says the board shall refer under any matter under this paragraph to a hearing officer. So that seems to perhaps to be saying that when a hearing is required or ordered, that it shall be referred to a hearing officer. Again, that's not what the statute says. It says the board shall refer the matter to a hearing officer. It did not really answer my question. For a hearing, right? So, again, if you sort of think about the policy behind a negotiability... 7117 says a hearing is discretionary. And you're saying that even though 7117 was incorporated into this statute, that we should read this provision as overriding the discretionary nature of... Yes, Your Honor, because this is the Congressional Accountability Act. And we start with the statute that Congress passed. For whatever reason, Congress decided this was the process it wanted to handle for negotiability disputes. It didn't adopt the process that was under the FLRA statute. Because if it had, you wouldn't need any of this process under the statute. The question is what did they adopt and what didn't they adopt? Well, they adopted the statute and the rights under 7117 under paragraph C-1. And they adopted the process for a negotiability dispute to be handled under C-1 as well. There are decisions from the D.C. Circuit making clear that these negotiability disputes are unique and that it's really important to resolve them quickly. And you don't disagree with that, do you? I don't disagree at all with that. And, in fact, the hearing helps that. It helps focus what the issues are. It focuses the facts. And we'll see in the later argument, there were a lot of inconsistent, wrong facts that the Office of Compliance relied on to make its decision. If we had the facts and the record developed up front, we might not be here. That's why the hearing is important. As a practical matter, if enforcement is always available here after the board does a negotiability ruling and you say, we don't like that, we're going to ignore it, and then they'll come here, what practical difference is there between whether there's jurisdiction over your petition for review or jurisdiction over their petition to enforce? I don't think there's any practical difference. I think the board makes some kind of argument that if you take the absence of jurisdiction over your petition to review, that tells you something about how when they come here to enforce, our review ought to be with a very light hand. Is that the only difference? I think that, again, the policy is where I start with this. Negotiability is to work on the relationship with the union. It really shouldn't be involving the Office of Compliance at all in the process. And there are steps along the way that we can do that with the hearing process. If you're waiting for us to come in enforcement, then it looks like we're not complying with the law. And that's just not a place that the department wants to be. It wants to have good labor relations. It wants to work on the issues. I'm not really understanding what you're saying. If we were to read the enforcement action review as being subject to traditional APA standards rather than the lead-in-kind standard, is there any practical difference? What is the practical difference about your having to raise the issue in an enforcement proceeding as opposed to being able to petition on your own? The practical difference from our standpoint is that you have a better record developed when you have a hearing. If it's just the enforcement, there's no hearing. It may only be me. At least I keep getting confused between whether we're talking about jurisdiction or whether we're talking about whether you have an absolute right to a hearing, parenthesis, if only you had asked. Can we just focus on the jurisdiction question? Sure. So, again, with respect to... What difference is there? Assuming that review of their enforcement petition would be under the same standard or review as review under your, call it an appeal from the negotiability ruling, what... And assume also that in either event, the hearing rights are the same. Right. There would be no difference. There would be no difference. The only reason I'm sort of focusing on this is because then it reads out this whole process that Congress came with under 1351C1. Would there be a difference in terms of the time in which it takes to ultimately resolve these questions? In other words, would it make more sense to have whatever review is appropriate done at an earlier phase in the proceedings rather than waiting until the enforcement phase? It's hard to say, Your Honor, because if they followed the statute, you'd have a hearing officer decision that fleshed out the issues. You'd have those issues appealed to the board of directors. Following their reasoning, you wouldn't have a hearing and you wouldn't have that process to appeal. They would make the decision in the first instance. And so by making that decision... Would it be consistent with the idea of an expedited process? Well, I'm not sure how expedited it is depending on how long they take to make a decision. Sometimes their decisions take over a year to decide. So it's sort of out of my control as to whether they control an expedited process and how they decide it. But the challenge for us is when they have an expedited process, that's sometimes where the errors get made as a matter of law. Can I ask you this? Do we have to... If we accept your theory about jurisdiction, which I think has some textual basis, do we have to say that something in Morris is wrong? I think Morris was correctly decided because it was an arbitration award pursuant to that first sentence of the judicial review of 1351C3. Except for matters referred to in paragraph 1 and 2, Morris was a matter in paragraph 1. So I think that Morris is correctly decided. I just think that... This is not clear in my mind. I thought in Morris there was a dispute about whether the grievance that went to arbitration did or did not involve an unfair labor practice. And this court in Morris at the very end of the opinion says we don't need to decide that. So we have to assume that it did involve an unfair labor practice, in which case the 7123 exception to the non-reviewability principle wouldn't apply. Correct. So if the court had decided that issue on the merits, then it would have been an unfair labor practice for which they had jurisdiction. Right. And then Morris says expressly the statutes defining the right of judicial review to judicial review of board decisions thus make clear that only the board's general counsel and the respondent to an unfair labor practice, which we do not have in front of us, are authorized to obtain review in this court of an adverse board decision. Unless you tell me that we do have an unfair labor practice in front of us, but I thought the petitions expressly disclaimed that. Right. We didn't have it in front of us here, and we didn't have it in front of the court in the Morris decision. Well, it was in front of the court, but there was a dispute about it. Right. So, I mean, it seems pretty clear what Morris is saying, and it's contrary to what you're saying. So you'd have to say, well, that issue was just dictum. Well, the negotiability was not before the court in that case. They didn't talk at all about the negotiability petitions, what Congress had intended. In fact, they didn't even talk about C-1 if you look at the decision-making and how they got to that provision. Was your office involved in Morris? I don't remember. No. Or just the board? Just the board and the union. Okay. So this is the first time we've had an opportunity to address that issue. Might I turn to the termination action now? Have I? Yeah. Okay. There are other questions on termination now. Okay. Here the office of compliance found that there were... We should be having a clock here. We, I think... Do you see the clock up there? No. Okay. He sees four and a half minutes over his time so far. Okay. Is there some way to fix the clock so we can... I'm not sure why that's not there. Okay. Go ahead. Thank you, Your Honor. Here the union found that there were three proposals that were negotiable. The starting point, however, is the statute itself. If you look at their decision, they not once refer to the negotiability statute, which provides that a matter is... What is your contention here? Is it primarily that this would be inconsistent with the statute? There are three inconsistencies with law. But that's the position, right? Yes. You're not relying on the specified by law provisions. Correct. Okay. Correct. We are relying on 7117, which says you have a duty to bargain unless it is inconsistent with law. The three laws that it is inconsistent with are the special rule on terminations that Congress passed giving the board approval authority over terminations under 1907E1B. The second statute is the Congressional Accountability Act, which took out the Capitol Police Board, who is the final approval authority, out of the statute and not making it subject to the labor relations provisions. And the third statute that it's inconsistent with is section 7121E and 7122. Together, those three statutes provide... And just to remind me, what does 7121E and 7122 do? 7122 is the arbitration? 7121E is the grievance procedure. 7120E provides that if you have a choice of an alternative form, you can either bring the grievance through a negotiated grievance procedure or you can bring it through the statutory appeal procedure. But it's merely an election of forms. It doesn't create its own form. If you look at 7122F, that then goes to the judicial review. So if you have judicial review in that statutory form, you get that judicial review in the negotiability form. And then 7122F provides that for those matters that fall under this judicial review and this other process, those cases do not go to the FLRA for decision. Those cases are exempt by the statute from that process because Congress wanted to create a separate process for terminations to be decided. I'm not sure I understand your point. There's nothing in the statutory scheme that says that the decision of the board on a termination is to be final and not judicially reviewable, right? Well, approval must mean something, right? And in that same statute that, you know, if you think about... There's no specific provision that says there's no judicial review. I know the board has come out with its order that says that, but I don't see that that's necessarily entitled to Chevron deference. But there's nothing in the statute itself that says that the board's decision shall be final, right? It does not say that, but what else can approval mean? Because by definition... If you look at the Fort Stewart case in the Supreme Court, that was, I think, about whether something was bargainable and the something was the school establishing agency's establishment of salaries or something, right? And it was just an ordinary provision that said the agency gets to fix the pay. Why is this any different from that? The police board gets to approve a termination. So what? That doesn't mean it's removed from otherwise applicable bargainability provisions. Why is this a stronger provision than the one in Fort Stewart? Because the focus here is on the inconsistent with law. So let's play out the scenario. The board approves a termination, and that case then goes to an arbitrator. The arbitrator says... They can reverse the police board, right? No, the police board has no... They have no jurisdiction over the police board at all. They can reverse the termination? Is that... They can reverse the termination. That would be the consequence, right? And that's what... Our argument is that they couldn't reverse the termination. Right. Our argument is they can't reverse the termination because the board approved that termination. And so then you have this inconsistent with law. The board says, we've exercised our statutory authority, Chief of Police. We've told you we've approved that termination. That's our decision. That's our statutory decision. By changing that or by allowing that decision to go, it doesn't matter what the board says. Because ultimately what you're saying is... There are two boards here. You mean the... Yeah, the police board. So ultimately, play out the scenario, right? An arbitrator makes that decision for a termination of an employee. That decision is unreviewable by anybody. Congress clearly couldn't have meant that bargaining unit employees got more rights than any other legislative branch employee, than any federal branch employee. That would be the consequence of it because that arbitration decision wouldn't be subject to review at all. Congress thought... Why is it that the arbitration decision... Let's assume that you negotiate a grievance procedure with respect to terminations. Yes. Part of the grievance procedure is it goes to an arbitrator, and the arbitrator can overturn the termination. That presumably is what the union is seeking here, right? Right. So why is it that that arbitration decision wouldn't be subject to any kind of judicial review after that? Because 7122F says that decision is not subject to review. It's a termination decision, not subject to review. 7122F? Yes. That says either party to arbitration in this chapter may file with the authority and exception to any arbitrator's award pursuant to the arbitration, other than an award relating to a matter described under 7122F. You're talking about 7122 in Title V? Correct. 7122F? Correct. So if you start with 7122... Hold on a second. This must be done. It can't be 7122F unless I've got the wrong version. No, no. It's 5 U.S.C. 7122, which refers to Section 7121F. Oh, 7121F. Yes. Thank you. So what 7122, 7121E and F provide is an alternative form if there is one, a statutory alternative form for terminations. So wait. How do we get this provision incorporated? Where is this incorporated in Title II? Under the CAA? That's under 1351C1. 1351, I'm sorry, A1. A1. The rights and responsibilities of 7119 through 7122. C1 picks up the 7122 authority decision. This is 7121. How do we get to 7122? It's 7119 through 7122. So it's 1920, 21, 22. I see. And so Congress understood what the law is. You think you've just explained, but I haven't gotten yet, your precise argument about why something in 7121 and 7122 would be violated. It's inconsistent were an arbitrator permitted to reverse a termination after the police board has approved it. Can you explain that again? Sure. We start with what the courts have interpreted 7121 to mean. Unlike the Office of Compliance, which says it's an expansive provision, 7121 is actually a limitation provision. And one of those limitation provisions is how you handle terminations and similar matters. And so what the court has said is we've created a mechanism if you have statutory appeal rights. So, for example, in the executive branch, they have statutory appeal rights to the MSPB and to the federal circuit. So if you are in a negotiated grievance procedure, you can either go grievance route or appellate route, but not both. But when you don't have a statutory appeal right, then the courts have said, 7th Circuit and the D.C. Circuit have looked at this and said, 7121 does not create an independent right to challenge terminations. And that's why that is important, because the Office of Compliance is reading 7121. I'm sorry, I'm not following this. So, 7121, where does this say that a termination decision by an arbitrator is not reviewable? That is under 7122. 7122 is in no review provision. So that has the clause there, other than award. Either party for arbitration may file the authority in exception to any arbitrator's award pursuant to the arbitration, other than an award relating to a matter described in 7121F. And what is such a matter if we look at 7121F? So 7121F talks about a matter covered under Section 4303 and 7512 of this title. Those are terminations and suspensions to motions greater than 15 days, which have been raised under the negotiated grievance procedure in accordance with Section 7703 of this title pertaining to judicial review, shall apply to the ward of an arbitrator in the same manner and under the same condition as if the matter had been decided by the board. Matters similar to those covered under 4303 and 7512 of this title, which arise under other personnel systems in which an agreed employee has raised under the negotiated grievance procedure, judicial review of an arbitrator's award may be obtained in the same manner and on the same basis as could be obtained as a final award under applicable appellate procedures. I'm not getting it. I'm sorry. How does this say that an arbitrable award pursuant to the negotiated grievance procedure is not judicially reviewable under any circumstances? You start with Section 7121E. Matters covered under 4303 and 7512, which also fall under the coverage of a negotiated grievance procedure, may in the discretion of the employee be raised under the appellate procedures or under the negotiated grievance procedures, but not both. What the courts have said is this is an election if you have an appellate procedure. If you don't, this Section 7121 does not create an independent right to review. So together, when you read those three provisions together, and that's the D.C. Circuit decision, the 7th Circuit decision, and the 9th Circuit decision, every appellate court that has looked at the breadth of 7121 has concluded it's not an expansion of grievance rights that goes to an arbitrator and then is unreviewable. It's a limitation because Congress... I'm sorry. I do not understand what your argument is. Let's assume that you're correct, that the arbitrator's decision in the termination would not be judicially reviewable. Where does that get you? Well, it gets the arbitrator to have the final say over any termination of a legislative branch employee. Well, so what? Well, that doesn't... You know, they would have greater rights than anyone had been given in the federal executive branch, and there's no indication that Congress intended to do it. What Congress intended was to give basic rights to employees. Here, by doing that, the final person... And these are officers that carry guns. The person that is making the decision as to whether that officer should be carrying a gun is not the chief of police. It's not the board that has the enforcement of the legislative branch, the House and the Senate and the Capitol. It's this outside arbitrator that's making a decision whether to put a gun in an officer's hand. And that's a policy problem. Ultimately, when Congress came up with it, if the Congress had intended that an arbitrator makes that final unreviewable decision, I think you'd see it somewhere in the statute, because that's pretty important. If Congress envisioned that that arbitrator could make a decision unreviewable to put a gun in somebody's hand, that's pretty significant. In the FLRA context, aren't there rather a lot of federal employees with guns in their hands that are in the same position? The difference, though, is that case ultimately gets reviewed by the MSPB and by this court. So that's the difference there. There's a review process of that. There would be none here, and that's pretty significant. The arbitrator's decision doesn't get reviewed by the MSPB. It comes directly here. Correct. But there is a review of that decision. In this setting, there would be absolutely no review. I think I understand your point. Unless there are other questions here, why don't we hear from the Compliance Office. May it please the Court, good morning. I think we can all agree that the Capitol Police has the burden to establish jurisdiction here. And I think it's also fair to say that in their primary brief, they really did not establish jurisdiction. They don't even cite Morris. Morris is a case that came out of the- I'm not going to decide this, but based on bad briefing, there's not bad briefing in this case to go around. I understand that. But I think that Morris really established what jurisdiction. The Court of Morris looked at the same thing. Well, it says that, but maybe it was dictum. If I remember, I think I looked at your brief in that case. You did not make that submission about the interpretation of 1351C provisions in your brief. I don't think you ever said the respondent to the complaint is only the respondent to a filing by the General Counsel. Or even only to an unfair labor practice. I believe we did. I think that was the whole point of citing Morris. That was what they decided is that you have to be a respondent. I'm sorry. I misspoke. Put yourself back 10 years. Think about your brief in the Morris case. I do not think that you made the blanket assertion about respondent to the complaint that the Morris opinion ends up articulating. That may be so. I didn't brief Morris, so I don't recall. And it didn't involve a negotiability petition or maybe other things in paragraph 1 that are different from the grievance and arbitration process that was in front of the court. That is true. If you look at 1351C3, what in your view does the reference to paragraph 1, memory C1, have to do? If you read C1, that defines the authority of the board. And it says the board shall have the same authority as the Federal Labor Relations Authority has with respect to those various statutes. Which includes 7117, which says that the board shall have discretion to decide whether or not there's going to be a hearing. It also incorporates the board's authority in unfair labor practice cases. So it talks about 7116 and 7118. By referencing both 1 and 2, it allows a party, either the general counsel or the respondent to a complaint, to raise issues regarding what authority the board exercised under 1 or what the general counsel exercised under 2. If the general counsel decides he or she is not going to proceed in filing a complaint, then the person, the employee or the union or somebody who makes a submission, I'm trying to avoid the word complaint, makes a submission saying here's an unfair labor practice, the board gets to go ahead and do that. It gets to resolve that, right? It doesn't say, well, general counsel hasn't filed anything, so go away. I don't think it does do that. I mean, what it says is that the board has the same authority as the Federal Relations Authority has with respect to unfair labor practice cases. That's what C1 says. So the FLRA, they cannot hear an unfair labor practice case unless the general counsel files a complaint. So can you tell me why we have jurisdiction over your enforcement action? Yes. If there's no complaint here. Right. The only, you have to go back to 7117. 7117 explains what the procedure is and when it comes to the board. No, no. Jurisdiction under enforcement, you have to start with 1407C082. Correct. Okay, and that says what you can enforce is a board decision on a, that is under 1406E, reviewing a 1405G hearing officer decision. 1405G is expressly about a decision on a complaint. So, I guess what I'm, I'll put it this way. You can't be here under enforcement. Tell me why this is wrong. If I put it to you, just tell me why this is wrong. You can't be here under 1407A2 unless there is a complaint that started this proceeding because that's what the board ruled on. Well, the only, the board's authority to issue a decision, the only authority is under 1406E. So, you're saying 1406E is not limited to situations where there's been a reference to the hearing officer? Correct. I mean, I think it's really the last sentence that's applicable, and that is a decision that does not require further proceedings. Having, before a hearing officer shall be entered into the records as a final decision. And if this had gone to a hearing officer, then would there be a complaint? No. How, I mean. There is a way there could be a complaint that went to a hearing officer, and that is, and there is, I think there are. Obvious, if it was an unfair labor practice. Exactly, exactly. In other words, if there, there would be an, I mean, the reason why we sought the petition here is because this is supposed to be an expedited procedure. The other way that we could enforce this is by filing an unfair labor practice saying they have failed to comply with the board order. And that would then go through the hearing process and would go through the board. And that would be another two years. I mean, so, the way we read the statute, there is an enforcement authority under any decision, a final decision of the board, that we can seek enforcement authority before the court. And if you read the purpose of 7117, along with the regulations, this is supposed to be an expedited procedure. And we're asking you to expedite it for us. I mean, and to reach the issues that. Wouldn't expedition be served by not waiting for an enforcement action? Well, you could. The merits are exactly the same. Right. Unfortunately, the Congress made a decision not to. Oh, so now we're back to the text. Right. I think we're back to the text. So, if we're back to the text, how do you get here under 1407A2 for enforcement? As I said. Which says, coming from 1406E, which is about, which you go back up to 1406A, which starts the process of reviewing a hearing officer decision under 1405G and 1405, what B, C, G are all about complaints. Right. And that takes you back to the authority they have under 7117. Because under 7117, petitions. I don't think that is taking me back. Right. You need for 1407A2 jurisdiction for there to have been something that came through 1405G to 1406E. And 1405G is all about a complaint. And I'm happy to say you had that. And that if the hearing right is waived, then it's effectively encompassing whatever could have gone to a hearing officer. But it seems to me that that reference of 1351C1 and C3 internally to the 1405G process, the 1405 process, contemplates all but expressly that that process involves a complaint. And that is the key issue for 1305C3 jurisdiction. You're saying that the reference to 1406E includes situations in which the board renders a decision without going to the hearing officer. Correct. And that is contemplated in the incorporation of 7117, which says that you go directly to the board and they can decide to send it to a hearing officer if they want. But this is an expedited procedure that they will decide. Well, that gets us to this question, which was supposed to be in the next segment. And that is whether a hearing is mandatory here. And your argument is that the incorporation of 7117 makes the reference to a hearing officer in a negotiability dispute discretionary. Correct. That's correct. And if there's any doubt, the regulations make it clear. The board did issue regulations which pretty much mimic 7117. And those regulations were approved by Congress. I mean, the board doesn't have the authority to issue them. It wasn't approved by Congress. Not in an Article I sense. The president didn't sign anything. That's correct. But it was a joint resolution or a concurrent resolution. What's the status of that? Well, Congress approved it. I think we cited the provision in the congressional record. No, I understand that the two houses of Congress said, this is fine. That was no law. Well, except that it is a regulation. Normally, substantive regulations have the force of law. The agency has the authority to issue it on their own. Right, unless they're contrary to. Exactly. So they follow. You've got to let me finish, Billy. I'm sorry I speak a little slowly, but you've got to pay attention and let me finish. A regulation is unenforceable if it's contrary to a plain statutory requirement. Correct. I guess we're shifting over to that issue now. What's unclean about this? By the way, I'm going to put completely to one side the question of whether this was waived by the employer, which, as far as I can tell, it was. But if we're talking about what this means, where is the ambiguity? Well, I think the Supreme Court on many occasions has noted that the word shall can be ambiguous. It can be may and vice versa. We did cite a case for that. Ambiguity results from the fact that 7117, which is incorporated, makes the hearing discretionary, unlike 7118, which makes it mandatory. And you can read this provision. You don't necessarily have to. You could read it the other way. You could read this provision as saying that it's describing what happens when a hearing is either mandatory or ordered by the board. In other words, then you get the reference for the hearing officer. That's a possible reading. I agree, yes. But that's where the ambiguity is. In the very first sentence, it says it has the authority in 7117, which is the discretionary authority to send a case to a hearing officer. And then in the next section, it uses the word shall again to say it shall go to a hearing officer. And then it uses the word shall further on to say they shall issue regulations. And it further says that those regulations shall be the same as the regulations issued by the Federal Labor Relations Authority. Unless necessary to comply with this statute. Unless it's good cause. To implement the statute in compliance with, if it were otherwise plain, compliance with this plain provision of the statute would be about the best cause there is. But it's the first two sentences in C1 that are in conflict with each other. One of them says... They're not actually really in conflict because the board's authority is to hold a hearing. Maybe there's a kind of tension that you say the board's authority is to actually proceed even without a hearing. And then this other provision says you must send it to a hearing. But then you have the common sense is why do you hold hearings? You hold hearings to resolve facts. There are no facts. In the case that we're talking about here, these termination questions, I don't see any facts anywhere in the picture. This is all legal analysis, so there's no point. But in the other cases a little bit later, there might have been facts. But again, certainly there's nothing alleged here that there's any facts here. There's a question of whether some of these provisions have a de minimis impact. Is that a factual issue? I don't think it is based on the analysis that the board used, the analysis. The question is whether or not... I mean, we're moving on to those cases. But if we get to those cases, what we're dealing with is a situation where the Capitol Police had proposed some changes to policies. Under Article 8 of the Collective Bargaining Agreement, the union has the right to bargain over those changes in policies. And if the proposal that the union makes is reasonably related to the changes that they've proposed, then you get, at least according to FLRA precedent, that that's sufficient to get by the de minimis argument. I mean, if it's de minimis, why make the change to begin with? Anything else? Okay, thank you. Mr. Herrera, if you... We'll give you a minute here if there's anything more. Hello, the union. Yes, go ahead. Good morning. May I please support? My name is Megan Michak, and I'm here on behalf of the interveners, or the union in this case, the Fraternal Order of Police, United States Capitol Police Labor Committee, addressing briefly the jurisdictional question. One area that has not been addressed by either party is the inherent unfairness that would amount if the department's interpretation of the statute were to stand. Specifically, the statute speaks to either the general counsel or the respondent being able to file a petition for judicial review. In this particular proceeding, with respect to the negotiability appeals not related to the CBA, the department or the union brought 25 issues to the board. Twelve of those were found to be negotiable, and those are the ones we're about here today. However, the 13 that weren't, the union did not have the right to appeal. So if the department's contention is adopted, then the department would be able to file and seek judicial review. But the union would have its own. Isn't this exactly the same, I don't know, disparity in ability to get judicial review involved, even if there's no jurisdiction of the negotiability ruling itself, but jurisdiction only over the enforcement? Because who can bring the enforcement action? Can you bring that? We cannot bring the enforcement action. So you're on the losing end of getting a court to look at things regardless. Except that with the difference being that, as Mr. Ullman mentioned, it's not simply a petition for enforcement that would be the only enforcement mechanism. So in the instance where a proposal was found to be negotiable and the department refused to negotiate, the union would still also have the opportunity to file an unfair labor practice. But the 13 that you lost on? Correct. We can do nothing. They're gone. There is no mechanism whereby the union is not able to file an unfair labor practice against the Office of Compliance Board, obviously. The department did not negotiate over them, and the board concluded those proposals, and the board concluded that was fine because they were non-negotiable. So those proposals are gone. I'm not sure that I understand what you're saying. We have a statutory scheme here, whichever view you adopt, where there's no judicial review of a board decision that something is not negotiable. That's exactly correct. But what the department is attempting to do is to create a statutory scheme where it has the right to judicial review when the ruling is against it and not in its favor. And we believe that that is unfair because, again... Could you have a negotiability petition by the employer saying that the union had refused to negotiate? I believe that the statutory scheme would allow for that, but I'm not sure as a practical matter that that would be a scenario that would ever occur, frankly. As the union... I'm not sure that the Statute 7117 allows for that. I think the regulations that the Office of Compliance has enacted are a little bit broader in that they speak to whichever party is aggrieved. And, again, that is traditionally going to be the union because if the employer is making a change and refuses to negotiate with the union, then there's potential for a negotiability petition. But if the employer doesn't make a change, there would be nothing to negotiate over, no basis for the union to file or for the employer to file such a petition. If the union refuses to negotiate, the employer simply implements what it seeks. So there would be no practical... Even if the statutory scheme allowed for it, there would be no practical basis to permit or for an employer to file a negotiability appeal. Can I ask a question on the merits of the termination? Yes, I'd like to turn to those. Thank you. Can you try to help me understand... Put aside the technical correction issue. Most of the time that was spent discussing this had to do with 7121EF and 7122 and how even negotiating over a possible grievance procedure to reverse a termination decision would produce a conflict with something in those statutes. Since I don't entirely understand the argument that was made affirmatively on that, I guess I'm asking you to help me understand why you think that's wrong. Well, we believe that it's wrong for a number of different reasons. The department has indicated that one of the reasons that the statute is non-negotiable and inconsistent with all is because of the special rule on termination. I want you to put that aside. Setting that aside, with respect to the 7121 question, which seems to be where the difficulty lies, we believe that there is another personnel system that's been... within the dictates of 7121E which speaks to another personnel system being set up and that that's exactly what has occurred here. There is another separate personnel system. This is not a situation like the cases that the department has relied on where the employees are executive branch employees who are exempted from Title V. These are the legislative branch employees to whom some of Title V's laws apply. So we believe that the provisions of 7121E expressly contemplate what has happened here, the creation of a personnel system for these legislative branch employees who can then enjoy the benefits of that. And that the statute, in using the language, if any, when it talks about the choice between going to a merit system protection act or protection board type procedure or going through the negotiated grievance procedure, we believe that the statute specifically contemplates what happened here, which is a situation where a personnel system was enacted, but there was no similar merit systems... no procedure similar to a merit systems protection board. And we've also cited to... But you can... you say that you can grieve a term... if you have it in the collective bargaining agreement, you can grieve a termination, go to the arbitrator, and then what happens about judicial review? So then the judicial review would follow along the same procedures as 7121E and... So you're saying 7121 allows for judicial review of the arbitrators? Under the exact same circumstances that any other federal employee who's covered by 7121 would have judicial review, yes. So we don't... Oh, wait, I'm not sure that I understand that answer because for federal employees, the judicial review is provided for as an alternative. You can get judicial review of the arbitrator's decision in this court. Are you saying that that same provision applies here or a comparable provision? In the statutory scheme that's been set up by the Congress for these employees, the department is then able to file exceptions with the Office of Compliance Board of Directors, and there is no judicial review of those exceptions. So there's no judicial review of the arbitrator's decision? No, except, again, except that... Yes, there's no judicial review. I'm sorry. Yes, there is no judicial review except in the scenario where there's an unfair labor practice involved, which, again, gets you through the unfair labor practice procedure. So his premise is right that here, in absence of an unfair labor practice, the arbitrator can reinstate an officer that the police board has terminated, and the courts can't put their... can't review that. Again, yes, except that because the Congress did not enact an MSPB-type proceeding in this particular procedure, the employees only have the ability to go through the negotiated grievance procedure. So that piece of the judicial review of the MSPB process would not be available to these employees because the MSPB process has not been enacted. But the answer to your question is yes, that's correct, but it is a function of the fact that the Congress did not put these employees in the MSPB process. Well, but they say that's an argument against finding this to be a negotiable subject so that the process is limited to the process provided in the statute, which is a decision by the chief of police and then reviewed by this board. And again... The board's decision can't be overturned, effectively overturned, through the grievance procedure. Why doesn't that make some sense? Because the statute... that's not what the statute says. The statute only... and again, I know you instructed not to talk about the special rule on terminations, but the special rule on terminations only deals with the pre-termination issue. The statute... the special rule on terminations doesn't require an employer or the department, the chief of police, to terminate an employee. It only... the statute provides that if the chief wants to terminate somebody, they have to take it to the board, the board has to approve it or take no action, and then after that happens, the statute's very clear, the chief may terminate the employee. It is a discretionary act. Up until the moment of the termination that it is the chief that is the one that is terminating the employee. Again... Sure, but the result of that is that his decision that somebody needs to be terminated because that person is a threat to public safety can be overturned by an arbitrator without any further review. The arbitrator's decision is the review in this particular circumstance. You know, again, the department acts as though the arbitrator is always going to rule in the favor of the employee. An arbitrator is a neutral. That is not always going to happen, and so the arbitrator, again, acts as a review as they check any balance on the department. From the union's perspective, if the department gets what it wants, there will be no check on the chief's ability to terminate an employee for any reason under any circumstance. And the arbitrator, again, from a fairness perspective... That's not perhaps so startling because FBI employees, for example, under the statutory scheme, get any judicial review. They get the internal Justice Department procedure, and that's the end of it. And because they have been, under the statute, very specifically accepted from that particular right, the cases, the instances where the courts have found that there is no right to negotiate a grievance procedure that contains an arbitration provision for termination are instances where the statute says up front that these decisions may be made without applicability of other laws, that these decisions may be made without considering other laws, whereas the statute in this case specifically requires the chief to act in conformance with other laws and regulations. So the statutory scheme is entirely different for those employees. In your view, then, who has the final decision, the chief or the arbitrator? We believe that the chief is the individual who makes the decision, but under the negotiated grievance procedure, if the matter is taken to arbitration, the union's proposals are that that decision would be final and binding, again, subjected to any other unfair labor practices or anything else that may come up under the statutory scheme to allow challenge thereto. The agency's argument is that the chief of police is the one who should make this decision and that it's within the chief of police's discretion to make that decision as a final decision. I'm not certain that the department is arguing that the chief is the final decision maker. I think the department is arguing that the board is the final decision maker and that there is no reviewability of the board's decision. Thank you. Is Michak, is that how you pronounce your name? Michak, sir. Michak. Okay, thank you. Mr. Herrera, we'll give you a minute here. Thank you, Your Honor. I just wanted to make three points a little bit clearer here. Ms. Michak said that the arbitrator was the check on that decision, but the decision is that decision of the board. The board is not subject to the Congressional Accountability Act, and it would be ridiculous to have them check something that they have no jurisdiction to do. Rather, the check of the chief's decision is the Capitol Police Board, the security arm of the legislative branch employees that's made up of the House Sergeant-at-Arms, the Senate Sergeant-at-Arms, and the architect of the Capitol. That is the body best suited to make sure that the chief's decision is consistent with law. Second, I didn't hear either Megan Michak or Mr. Ullman talk about the Seventh Circuit, D.C. Circuit, or Ninth Circuit decision, which clearly says that 7121 is a limitation on the grievance process, excluding terminations from that action. What I hear them saying, not relying on any case law, is that it's an expansive version that's just not consistent with law. Okay, thank you. So let's turn to the second segment now, Mr. Herrera. Oh, I'm sorry, Mr. Ullman. I think I'm first on this one. Some of this I think we've already covered. On this segment, we're talking about whether the office erred by not referring the negotiability petition to a hearing officer and what standard of review. I don't understand how you can argue that the APA standard of review doesn't apply to enforcement decisions. We have a situation here where, according to you, there is judicial review of the enforcement decisions specifically provided here in the statute. There's no provision of the statute which says that the APA standard doesn't apply and the APA standard is the default standard, which applies generally. Why don't we reach that result? Well, the argument is premised on the fact that Congress did not grant direct review of the board's decision on negotiability. No, but according to you, it granted review of the enforcement decision. And so when we're reviewing the enforcement decision, why don't we apply the APA standard? And as I said, we did reference the National Supreme Court's decision in the National Labor Relations case, which is that… …here there is a provision for judicial review, even under your own view. Right, and I think it really goes back to the whole idea of the Congressional Accountability Act. The idea of the act was to provide some rights to employees in the legislative branch and also to place some obligations on the employing offices, but it did so in a way as to limit executive and judicial interference with what is primarily Congress's decision regarding their own agencies and offices. And so they very narrowly defined what judicial review was going to be. They very narrowly defined what… Where did they narrowly define what judicial review was going to be? Well, I think as Morris cites, I mean, if you go through the jurisdictional section… You mean to say narrowly defined a standard of review? Or just the circumstances in which there would be such a thing as judicial review? Okay, but we have a situation here where you say there is judicial review of the enforcement decision. Under your view, the statute specifically provides for review of the enforcement decision. So why don't we apply the APA standard? I mean, I think what we're seeking is the court enforcement order. I mean, there isn't really an enforcement decision here. You're going to make the enforcement decision. Well, right, but in the context of the HEPA, we're going to review the board's decision. There is review of the board's decision about negotiability when they refuse to comply and you seek an enforcement petition. Right. What's the basis for saying the Liedemann-Kind standard applies where there's judicial review provided in the statute? Right, and again, it really relates back to the theory where if Congress has not granted review, then the review tends to be more limited. So directly… But they did provide for review. Well, the question… When you're talking about enforcement of a board order, the first question is whether they have complied with the order and that's primarily the issue before the court. It's our contention that that is the primary issue unless you reach the greater standard that's set forth in the Supreme Court case. So what other situation is there that you may want to analogize to where an agency order is not directly reviewable by the loser but the agency is authorized by statute to come to court and enforce the order? In that scenario, I think your position is there's some analogy or there's some other situation, some case law that says in a situation like that, the review when the agency comes to enforce is with a very light hand, whatever that may mean. And Liedemann isn't that because there actually is no authorized review. Liedemann aside, can you give me an example of that scenario? The other scenario is actually a review of arbitration decisions. So arbitration decisions are not directly reviewable by the court but they are reviewable in an unfair labor practice case because the only way a party can enforce an arbitration decision under the federal relations statute is by filing an unfair labor practice. And so those cases go through the process and eventually come to the court. In fact, this court has... Unfair labor practice being the refusal to comply with the arbitrator's decision. Correct, correct. In fact, this court has a case pending next month on October 2nd that oral argument is scheduled on that very scenario. It involves a termination and an arbitrator will return the termination of the capital police and unfair labor practice was filed saying that it was unfair for them to say it, to not implement that order. That went to the board and now it's to the court. So the idea that there is no review of the decision regarding arbitrations, there is review but it is more limited and where the DC circuit... It goes back to the discussion we were having earlier. So what you're saying is that the arbitrator's decision is subject to judicial review under the Liedemann time standard, right? Right, and the DC circuit, I think, is phrased a little bit different. I think they say if it's contrary to clearly established law that the court has... So 71.21 doesn't preclude judicial review of the arbitrator's decision under that standard. Correct, correct. It's the clearly established law standard is what the DC circuit uses. So for instance... Which is the best DC circuit case on that? Unfair labor practice for refusing to comply with an unreviewable arbitration decision. I don't have it here in front of me but I can get it for you. I believe it's in our briefs but that's the standard that they use and I think it's a sensible standard. So that's what we analogize this to is that, again, the arbitration decision itself is not directly reviewable but it is reviewable in an enforcement action but the court doesn't go back to deciding whether or not the exceptions were properly decided. The only review is whether the party can establish that the arbitration's order is contrary to clearly established law. I know this is a very convoluted process. Getting back to the other issue here which is, I guess, the hearing officer issue. I don't know whether we fully fleshed that out or not but I think that, again, I think in the end it has to be applied in a sensible manner and if there are no factual issues and the board has the discretion to expedite this proceeding What's your view if there are factual issues? Is your view that by the incorporation of 7.117 that the decision whether to refer those factual issues to a hearing officer is discretionary? Yes, I believe it is. I think it's incumbent upon the party to identify what the factual issues are and to ask the board to refer them to a hearing officer. If you don't, just like in the district court, if you don't tell the court that there are any factual issues you can't expect them to say we're going to have a trial on it. That's a separate point, I think, from the point that Chuck was just asking you about. Putting aside the 1351, what is it, D, command to make regulations and to follow FLIR regulations unless there's good cause for doing something different or whatever the language is. I think Judge Dyke's point is that if you look at 1351 C.1 itself, the one with the hearing sentence in it, it also has a sentence referring to 7.117 which would suggest the same authority, that the board has the same authority, the FLRA has, which is an authority to do business in its discretion without a hearing. That creates an internal single paragraph tension, ambiguity, that means that there is no clear and unambiguous mandate and therefore a reasonable thing to do is to follow the discretion. I think that's correct. I think that's basically what we argued. Certainly under both the statute and under the regulation they have that discretion. And it can be abused if there's a factual question. Right, but normally you have to bring it to the board's attention that yes, there are factual issues and you should refer this to a hearing officer. What happens under the FLRA where there's a factual issue? Do you know whether the tradition there is to refer it to a hearing officer for the resolution of a fact issue? I don't know that. I mean, reading the statute it seems that the preferred procedure is the expedited procedure which is the authority decides the negotiability issues. In many cases, the authority, their regulations are a little different in that they really only decide negotiability issues when the question is whether it's illegal, whether the proposal is contrary to law. So, in other words, if the department cannot implement it. They don't really decide bargaining obligation questions on their own in negotiability decisions. Thank you. Thank you, Your Honor. I'll be very brief. So, do we now agree that there is some review of an arbitrator's decision on termination under the standard that has been described as applicable in the D.C. Circuit? Again, and I apologize that I was not clear on this as I was up here earlier, under certain circumstances there is the ability for judicial review. As indicated in 7121, it's simply the judicial review that is subjected to this very delicate or light standard that we talked about for is it inconsistent with law. And I apologize that I wasn't articulating that clearly earlier. And that's through a filing of an unfair labor practice for refusal to comply with an arbitrator's decision. Yes. And as Mr. Ullman said, there are actually two cases that got to this court on that through that practice, so through that mechanism is the right word, currently pending before you right now. Oh, those came through that mechanism, not kind of more directly? Not through the negotiability process or any kind of direct judicial review, no. The actual unfair labor practice? Yes. Accusation for noncompliance with an arbitration decision. Yes, sir, which resulted in a complaint and a decision and then a petition for judicial review and a petition for enforcement of those decisions. And what are the legal issues in those cases? Those cases both involve employees who were terminated and who arbitrators ordered returned to work and who the department has refused to return to work. Does everybody agree that the clearly contrary to law standard applies or is there a dispute there about what standard applies? I believe there will likely be a dispute as to what standard applies. And what's the dispute? I believe that the department's position, and again, is that the process, because they have filed a petition for judicial review of the unfair labor practice, it is not the contrary to law standard. It's the applicable standard under 1407D for the judicial review. It's an APA standard. Correct. And just again, just to make sure I understand, in those cases, the arbitrator reversed the termination and then somebody filed something with the compliance board saying there's an unfair labor practice and the compliance board said no, there isn't? Yes, there is. In both cases that are currently pending before the court, the Office of Compliance Board of Directors concluded that there was an unfair labor practice and that the department had failed to comply with an arbitrator's award that was reviewed by the Office of Compliance and affirmed. So those matters are both pending before this court and the department has sought judicial review of the orders that the employees be returned to work and the Office of Compliance has filed a petition for enforcement of the same. And the compliance office is arguing that the APA standard applies? The compliance office is arguing that the APA standard applies to the petition for judicial review and that the other standard applies to the compliance with law standard applies to the petition for enforcement. Anything else? No, thank you. Mr. Herrera? Your Honor, the judicial review standard I think is pretty clear. If you look at Section 1407 of the Congressional Accountability Act, the title is Judicial Review of Board Decisions and Enforcement. Under that standard of review that is found at Section D of 1407D and lays out the standard to the extent necessary for decisions and proceedings commenced under subsection A1 and when presented in enforcement action, the court shall decide all relevant questions of law and interpret constitutional and statutory provisions. I don't find your argument about the when presented language to be particularly convincing. It seems to me that if you're going to argue for the APA standard, it has to be because that's the default standard that applies when there's no standard provided. I will start with the Congressional Accountability Act. I think that's what Congress meant when it said that. My default is the APA standard. When presented sure sounds like it means the issues that were about a legal question or a factual question, that is the court's not supposed to decide those if nobody is presenting those issues. Not that you sort of wipe out this reference to subsection A1 so that it includes A2 as well. It includes... That would be a very peculiar way to do that. Right. The second argument was that the purpose of the... ...circuit that the compliance law is on. Is that Leiden versus Kine? No. No. Apparently, in the context of arbitration, they're applying a standard similar to at least the Kine standard. Well, Leiden versus Kine... Those cases, as I understand, come up as unfair labor practice charges for failure to comply with an arbitration decision. At least as the cases are described in those cases, they're applying a very deferential standard of review to the arbitrator's decision that's implicated. Well, number one, if you look at negotiability disputes and enforcement actions, they apply the APA standard. They appear to be carving out a separate process for a separate cause of action that doesn't seem to follow that framework. Same with Leiden versus Kine. The review of awards under Leiden versus Kine is very limited. Otherwise, people would always be raising Leiden versus Kine to get jurisdiction. It's when there's statutory violations, when an administrative agency has exceeded its statutory authority. It's not a blanket review to get judicial review. We think in terms of the decision here, there is no board decision that went through the proper process. And so the board exceeded its authority by issuing a decision in the first instance. This is the hearing officer point? Yes. Congress said how it wanted to handle it. It was explicit in how it wanted to handle it. And that really does trump any discretion that they're giving to the... What's the evidence that in Title II, enacting Title II, that Congress wanted to change the rule about discretionary hearings under 7117? It is the language that they specifically adopted under 1351C1. That language must mean something because they also repeated it in 1351C2. The language could mean when there's a hearing, you refer it to a hearing officer. But it doesn't say that, Your Honor. I mean, if they said shall and it shall follow the procedures of B through H, that doesn't mean they get a discretion. It means that's what Congress envisioned these to do. If that's not what the Office of Compliance wants them to do, they can petition the Congress to change that. But that language is in their core region, and we have to give meaning to congressional language. We can't just ignore it. Okay. I think we get your point. Is there anything else? No, Your Honor. Thank you. Okay. Thank you. Mr. Alleman, anything further? I guess I would like to go back to Judge Toronto's question about the DC server cases. I think the best cases we cited, it's in our brief in 2018-15-02 where we argue the standard of review and we go through the DC standard, the contrary to the law standard. And there's a number of cases there. You're not going to actually tell me the DC circuit came and said? I can tell you the best case in here is the U.S. Department of Justice versus FLRA, 961 F 2nd, 1339-1333. Thank you. All right. Thank you. So let's turn now to the third segment where Mr. Guerrero is going to go first. And that has to do with the other, I think it's 12 proposals, maybe it's 11, that the Capitol Police say are non-negotiable. Okay. Hey, please, the court, do you agree that proposals about outside employment generally are negotiable? No. No. Why not? Because they don't govern the terms and conditions of employment. So in this case, the Capitol Police has provisions. Isn't it true that under the FLRA, the outside employment issues are negotiable? They are, but that has not been challenged to the federal circuit or to the DC circuit. That's the FLRA's position. While you work here, you may not do the following other things. That really doesn't have to do with the conditions of while you work here of employment? No, because it has nothing to do with your condition of employment. Right? It doesn't govern how you do your job, what you do. We're just precluding you from doing something that conflicts with your duties as a Capitol Police officer. So can you imagine a Capitol Police officer that is in a bar serving drinks and someone recognizing him as a police officer? We don't want to be in that position where because he's a Capitol Police officer. That may be an argument for why this would really be that in a negotiation you can say absolutely not. We are not going to get into a process of figuring out what the primary activity is of the owner of the bar. And we're not going to make a fact specific inquiry into the risk of favoritism with respect to some company that's under contract with the police board. All those seem like quite reasonable positions to advance, but why does that mean they're non-negotiable? I don't think they fit the definition of a condition of employment. It's what you can't do. Has some authority, the FLRA, some court or something made what seems this point that you're making that what you do on your own time is simply not a condition of employment? I don't know that that has been developed other than the owner. Has anybody said anything about it at all? I have not looked at that, Your Honor, because our position here is we didn't change our outside duty. That's a different point. So that issue I have not looked at thoroughly. I remember reading some FLRA cases where it said it was. I think the prior FLRA cases it said it wasn't. So there was a dispute as to whether terms and conditions of employment is covered by outside employment. For our purposes, though, in terms of the proposals D, E, F, G, and H, there was no change in the condition of employment. So we start with the statute under 7117. That's what gives us the authority for the duty to bargain. Under that statute, the matters are not negotiable if they're inconsistent with law. Well, I think what they're arguing, if I understand correctly, at least just as some of these, that they agree there was no change in the language, but it was a change to a directive from the standard operating procedure. And what's the import of that? A directive and a standard operating procedure both apply equally to employees. So what they have to do or what they should be doing under the statute, and this is the case law interpretation, prior to implementing a change of conditions of employment, an agency is required to provide the exclusive representative with notice of the change and an opportunity to bargain over those aspects of the change that are within the duty to bargain if the change has more than a de minimis effect. But an agency is not required to bargain over proposals that go beyond the scope of the proposed change or over the matter that is a condition on an agency bargaining proposals that are outside the scope of the bargaining. So the test really starts from the very beginning. What is the duty to bargain? Has there been a change in condition of employment? With respect to these various proposals, my impression was that as to a couple of them, there were some slight differences between the directive and standard operating procedure. Am I correct about that? There is, and let's go through the specific ones, Your Honor, if we might. Proposal D is exactly the same. If you look at Appendix 812 and 842. Okay, we can look that up, but D is the same, E is the same? D is the same, E is the same. F is the one that's just a slight difference. Employment in establishments where the primary business of the establishment is serving alcohol beverages. What it was previously was employment in establishments where alcohol beverages are served for consumption on the premises. So as I understand it, D, E, G, and H, you have a position these really are quite the same. There is something of a dispute about F, about whether that's really a change. Correct. And this is just on the change issue, then there's a separate set of concerns about de minimis, which have to do mostly with proposals other than D through H. Correct. So G is the same too? D, E, F, G, yes. F is the only one. F is the only one that has a difference as far as we're concerned. And then with the time and attendance proposals, you're saying there's no change also, right? Right. The premise... But there is a change in the sense that it used to be done by paper, right, and now it's done by computer. Not necessarily, Your Honor. If you look at the 2011 directive by the department, employees have always had the obligation to clock in and out. That was not changed in the new directive. Right. But now they have to use a computer or other mobile device when they're away from the duty station. Sure, you may. That too, right? Right. Again, keep in mind, we have Capitol Police officers that work on the Hill. It's rare that they're going to be away from their duty station. But if they do, we've given them a tool to use, which is the virtual clock. But the point is that you have to... It seems to me there's a change. It may be de minimis or whatever, but there is a change. The question, though, is does the proposal go to the scope of that change? So let's take a look at the proposals. Proposal P says the department will provide sufficient time on a daily basis for employees to complete their time and attendance responsibilities on a daily basis. There's no change there. They had that responsibility under the old process. They have that same responsibility under the new process. So there's not been a change to that aspect of the proposal. If you look at Proposal R, employees may request extensions of any timelines under this directive. Well, the only timeline I can see under the directive is that people have to certify their time by Monday instead of the old time by Wednesday. So I don't see that that's a change, or if that is a change, it's a de minimis change. With respect to Proposal S, if for any reason an employee is physically or otherwise unable to use the computer programs required under this directive, it's the same computer program. The work brain program has not changed. His or her time and attendance, the employee is encouraged to contact his or her first-line supervisor to discuss reasonable accommodations. So the Capitol Police has had employees clocking in and clocking out since as long as I've been there, which is in 2002. That has always been a process. We adopted the work brain process sometime in 2009 where employees clocked in and out, and we refined that process in 2011 by having a more proper system to do that and a process to do that. The only thing that changed when we came to the new directive is that we permitted employees to virtually clock when they're somewhere else. That's the only thing that changed, and for us, that's why we think that's a de minimis change, because it's not changing the terms and conditions of employment. Employees have always had to certify their time. Employees have always had to clock in and out, and employees have always had to tell supervisors when they're unable to do so. So based on the language of the proposals, those time and attendance proposals are outside the scope of the change. Now, certainly if one of the changes was about the virtual clock and an employee didn't have a proper token and what they do with that token when they can't get onto the virtual clock, that might be a negotiable proposal. But none of these proposals go to the virtual clock. They go to the work brain situation. The only thing that had changed under the new policy is that they attest their time via electronic. That hadn't been done before, and that hadn't been done via paper before. This is the first time that we allowed the employees to certify their time via that clock. But none of these proposals go to that certification process. They all go to the clock in and clock out on a daily basis, and so there's no change in the terms and conditions of employment. I'll just back up a moment and ask you to help me understand why there has to be a change in the conditions of employment. Is that because in order to try to negotiate something which is already provided, for example, in a standard operating procedure, that you have to wait until there's negotiation about a new agreement to address that? Correct. And there are no such negotiations going on now? There are, and surprisingly, they're waiting for the termination decision. So that's the time to do it. The department has a continuing need to update its policies, and that's why you'll see some of this. But what you don't see is anything changing a collective bargaining agreement. I'm confused now. Sure. If there are ongoing negotiations about a new agreement, and all of these subjects would be raised in the course of that new agreement, except to the extent that they're management rights issues and things like that, why are we here? Why are we arguing about whether there's been a change from the prior rule, when even if there wasn't a change from the prior rule, it could be subject to negotiation as part of the new overall agreement? I think we're here because management has a continuing obligation to run its mission of the department. And right now, I think that that collective bargaining agreement negotiation has been ongoing for three or four years, and with no end in view. Are these subjects part of that negotiation? They are not part of that negotiation. Can they be part of that negotiation? I suppose. But the problem is then the department can't carry out its business on these issues. So, for example, we have the work frame clock, and it lets people certify their time. If we have that wrapped up in negotiations, we would have a program or a system that the department can't use until we finish negotiations over it. And so that's why we do the obligation here where there's a change or there may be a change in a condition of employment. We notify the union and give them an opportunity to issue proposals on that. And a lot of the proposals get adopted. We just did it recently with our performance evaluation system and our award system. We sat with the union, worked out all the issues that they had with the proposal, and adopted them and are moving forward with those directives. So, we do that because it helps us manage the department and move forward with our mission. To wait for negotiations each time is a bit of a challenge. Now, certainly, if we were close to a collective bargaining agreement being ready to go, we would have incorporated these provisions into that process. But the chief had a mission to make sure that we got the four directives out, and that's why the collective bargaining agreement allows us to issue interim guidance if there are pending issues. And so our time in attendance is an interim guidance because of the issues pending before this court. Absence and leave is an interim guidance. Outside employment is interim guidance, and emergency suspension is an interim guidance. That's consistent with the collective bargaining agreement while we wrestle with these negotiable issues. The other issue I want to turn the court's attention to is the proposal dealing with absence and leave. The only rationale that the Office of Compliance gave for that proposal being negotiable is based on a false premise that the union gave them, that it was the first time that Capitol Police employees had ever been subject to the Capitol Police Board regulations. Well, that's just not factually accurate. The Capitol Police Board regulations came out in 1998, and there are regulations to allow the chief to set absence and leave for Capitol Police employees. Employees aren't subject to the board's regulation. They're subject to the department's policy. And so the proposal linking the department's policy to the board's regulations, which are outside of the Capitol Police's statutory authority, there's not the proper scope in the changing condition of employment. Those regulations haven't been changed, and this is a perfect example of how we had a hearing. So what did you propose with respect to those regulations, precisely? The union's proposal was that they be posted on the Internet. What did you—the word proposal has made this extremely difficult to talk about. What did you indicate you wanted to do with respect to— We indicated there was no change in conditions of employment. No, no, no. Before there was litigation in front of the board, what did you indicate you wanted to do with respect to what is now the subject of Proposal I? We did not want to negotiate it because— 179, I think, is the appendix where the directive refers to the consultant's regulations. That's the alleged change, right? Right. And this is putting—what is this directive? Is this directive—so, yeah, what is this directive? It's like OPM's regulations. Congress gave the Capitol Police Board authority to issue regulations pursuant to their statutory authority. They came out with regulations that they gave to the chief, and then the chief issues leave them pursuant to those regulations. Right. So this directive would be—I guess the only thing that I was— maybe this is just speculative on my part, but I thought might have been a change here is something along the following lines. You were always subject to the regulations, but you didn't know it quite as well as you now do since we put it in the directive. Now you know it a little bit better, and when you violate them, you're going to have more easily attributable knowledge with a greater possibility of more severe punishment because now you kind of really know it. Why is that—that little story I just told, why is that not what happened here, which is more than a de minimis change with respect to employees? And therefore, they come back and say, well, if you're going to make it a little bit more attributable to us, we want it to be something we can check in three seconds on the Internet. Well, so under that scenario, they have not received the regulations. They don't know what they say. But the grievance can never be about the regulations. The grievance, or if they have a challenge to it, is about the department's policy and its application to the employee. I'm getting confused. The directive, which is what's new, is at 179. It says the following publication should be referenced in conjunction with this policy directive and that it lists the regulations as one of the things to be consulted by. Correct. They claim that that directive telling you to consult the regulations is a change, right? That's their argument. And you say it's not a change. It's not. Those regulations have been in place since 1998. That's not quite responsive. The regulations have been in place. The regulations haven't changed. What's new is something that says, dear employees, consult these. The question is, is that directive, please consult these, is that more than a de minimis change in the conditions of the employees' working conditions? I would start with it's the Office of Compliance's obligation when they're doing these statutes to determine that. I don't think it's more than a de minimis. What did it say earlier? Did this directive replace the standard operating procedure? This directive consolidated some other policies. We just didn't have it as a reference. That's the only change. The earlier policy did not reference the regulations at all? Correct. That's the difference. Right. That's why I was focusing on this story in which they were a little bit obscure and hard to find before, but putting them in the directive, they're less hard to find and less obscure. And therefore, if somebody goes about violating it, there's now a new weapon to say, and you knew about it. But there's nothing in the regulations to violate. The regulations don't apply to employees. They give the chief the authority. So the only thing there is to violate is the department policy. There's not a regulation to violate. But the directive made the employees expressly responsible for following these regulations. No, it did not. It did not? All it did was list it as a reference. Employees don't follow that directive. The chief follows that directive. Employees follow the department's leave policy. That's the obligation. Why did you think it was a good idea to put this reference into the directive? I think our Office of Human Resources was just being overly thorough in including everything, and that's why it got included in this. Any other questions? There are no further questions. I think we've covered each of the proposals. Any other questions? Is there an obligation on employees to follow the regulations or the regulations directed to the chief? The way the directive reads is that it's in accordance with the regulations. So it sounds like... No, but answer the question. Do the regulations apply to the employees? Do the employees have to comply with the regulations? I'll be honest. I don't know. I don't have access to the regulations. I don't know what they say. The regulations are not published regularly. That's part of the reason why I think the union wanted to put it on the intranet is so that someone can read what the regulations say. If they refer to them. So the regulations are not in the record here? I don't believe they are. And when the directive tells employees to consult them, what does it expect? What does that mean? Are you saying nobody can find them? I know that I don't have access to them. I can't find them on the internet. I don't know how employees would know what they say. It's kind of like the order that the Capital Police Board issued. I mean, it's not published anywhere. You don't determine an issue. It's like this is an order. I think it's also, to bear in mind... It's not published. Regulations usually have to be published. Why are these not published? I have no idea. I don't know. We are really not in APA land at all, are we? We are not in APA land at all. No, we're not. I mean, the regulations of the board are published in the Congressional Record. They're not published in the CFR. The regulations are published in the Congressional Record. Yes, at least the regulations of our board, of the OOC board, are published in the Congressional Record. But those aren't the regulations that we were just talking about. No, we're not. There is no requirement for the Capital Police to publish their regulations anywhere to find out. And I think it's also important to bear in mind what the order is of the board. The order is that they should go back and discuss these proposals as part of the collective bargaining process. There is no order that any of these proposals have to be implemented. And I think why that's important is because the board's order under their regulations... Could you just go back to what I think is actually the legal issue on this? Why is this directive a more than de minimis change? Well, again, I think this particular directive, it went... I think it formally was a standard operating procedure and then it becomes a directive or a... And unless... I mean, those words don't even begin to tell me why that's more than a de minimis change. So at that point, you lose. So what is it that's more? Well, because I guess the common sense idea is a standard operating procedure or an interim guidance. The supervisors and the employees have much more flexibility in terms of whether or not they comply with it or not. I mean, this is what the standard procedure is. How do we know that? I think that was the argument that the union made. They said that if you make this a directive, we understand this means we have to comply with it. If it's an interim guidance or if it's a standard operating procedure. What does the standard operating procedure say in terms of compliance that the directive changes? Do we have the standard operating procedures in the record here? I'm not sure that we do quite honestly. Actually, I do think they are in the record. I looked at those. What do they say that gives the employees more latitude in the directive? Well, I mean, it says that this is the standard operating. It doesn't say you must do this. This is our standard operating procedure. So that's why it's a change. But you agree that the language with respect to outside employment is the same for all of them except for this one change in F, right? I believe that's correct, yes. But again, you know, the context of this is that there is an article in the current collective bargaining agreement that if the department is going to change, their policy is that they have to provide a draft to the union and the union is allowed to negotiate over that. And that's what happened here. I mean, this is where this all came about. I mean, they said we're going to make these now directives. This is how it's going to read. Here's a draft of it. And they then came up with proposals, whether you call them proposals or whether you say this is what you should look at. I mean, this is what we want parties to do during collective bargaining. We want them when they're going to make a change to talk about each other what those changes are going to be and to negotiate whether or not what the proposal should read. I mean, this is the whole purpose of collective bargaining. And so that when we get to the question of, you know, is it a condition of employment? Well, of course these are conditions. These are the things that unions typically bargain over. How do you record time? How do you make sure that my overtime is recorded accurately on the time clock? I mean, those are all things that you would expect a union to negotiate with their employer over as a condition of employment. Right, but that doesn't answer the question whether anything has changed and whether any change is more than de minimis. And, again, I think what the board focused on when they, again, on the 12 that they decided were negotiable, is that was the change that the union proposed, was it addressed to the specific change that the capital police was making in the directive? So if it's reasonably related to the change they were proposing, they found it to be negotiable. Well, some of these may seem to be questionable as to take the time and attendance that allowing 15 minutes, I'm not sure how that's related to the change from a paper system to a computer system. Well, again, that I think the board found that that's a procedure, that they were at that point proposing a procedure, and under the statute they're allowed to propose a procedure. No, I don't think that answers the question. If there's a change, the proposal's got to be related to the change, and a couple of these proposals don't seem to be related to the change, which is basically computerization. Right. I think the board's view is that you're going to make this, now you have to complete the time and attendance by computer, that therefore the question of how long it's going to take you to do it on a computer as opposed to on paper is a fair subject to bargain over. What about Proposal 8? I didn't find the sentence. I guess there are two proposals, so this is the emergency suspension. This seems to potentially restrict the department's ability to discipline, and the suggestion that it's only an after-the-fact limitation, I didn't find particularly convincing. This is a sentence in which they say that the burden is on the department to establish, and again, I think the argument that the Capitol Police made that this would interfere with their management right to discipline, and what the board found is that it doesn't because the decision to suspend an employee has already been made. Well, I don't find that very convincing, because when you're making the decision whether to suspend somebody, you're going to look to see what the standard is going to be to justify that. Because a week after the suspension, they now have to come and justify it, and if they can't justify it, then presumably it's going to get reversed, so it seems to be inconceivable that this doesn't alter the ability to suspend. Again, I'm here to defend what the board found. And that's the only issue on that. This is not a procedure thing, because burdens approve for way more than procedure, and this is not an appropriate arrangement. All right. Thank you. With respect to the question of whether these proposals or whether these directives address changes, they do. For example, in the outside employment directive, the proposed directive by the department imposes additional burdens on the employees as a result of the change in the directive. The draft directive includes the provision that an employee might be subject to discipline in a way that the old directive does not. That is the basis for the union's proposal. The union agrees that the language of those limitations does not change. However, the importance of the language of those limitations and the need for the employees to know what the limitations on their ability to have outside employment are has changed, because they are now subject to discipline. They are now subject to certain requirements about their ability to engage in, for example, voluntary activities during their downtime. Can we just maybe focus on some of these specifically? Let's start with D. Okay. As far as I can tell, the directive language appears essentially identically in 2012 standard operating procedure. Yes. Where is the non-de minimis change? Again, the non-de minimis change is that now this directive is something that the employees, as you previously said, now this is something that's going to be applied to you. You really need to know what it means. The union's proposal, again, is simply for an example of what that means. So then an employee who now, for the first time, might be subject to discipline for a violation of this particular directive. Did the compliance board find that previously employees were not bound by these standard operating procedures and now under the directive they would be? I don't believe that the compliance board addressed that question. I think that's what you were just saying. It's gone from non-obligatory to obligatory. And I don't see the finding for that. That is addressing the department's argument that there was no change in working condition here before you. Yeah, but I think what Judge Toronto is asking you is to acknowledge the change in the respect of the proposals where there's no language change if, in fact, it's gone from being voluntary to being mandatory and the board hasn't made any decision about that. While the board did not address that particular fact, the board noted... It could be an important particular fact. I think what the board did say to address the issue is that when the board is looking at whether a proposal is negotiable, unlike what the department is urging, which is that you look to the specific language of the specific sentence that the union proposes to change or proposes to add something to or proposes to add something to the end of, you actually have to look holistically at the draft directive and say, how does this draft directive or draft SOP or whatever the draft may be impact the employee's relationship with its employer, its working condition? So while the board did not... What does the SOP say about employment? Where do we find the SOP? The proposed SOP... No, not the proposed directive, but the SOP that existed before. The SOP that existed before with respect to outside employment starts at APPX 839. 839? Yes, sir. Which volume of the appendix? This is the first... Volume 2. Where's the language here that says that this is just guidance or something? Again, the SOP simply indicates that it's an... Where are you? I'm on 839, the first page. It says that it's simply there to establish an effective management and tracking system. If you look at the substance of the document itself... Where's the language on the page? The very first under purpose, directly under the subject matter on the top left. The next couple of paragraphs start sounding rather mandatory. They are. They are, certainly. Again, the distinction here between this SOP and the draft directive that was provided to the employee is that the draft directive simply says, ensure that the employment or service is not a prohibited activity, for example. Then you give it to the employer to make a decision. Under the proposal, again, the change to the working condition that required or that mandated resulted in us making these proposals is that now the employees must ensure that their outside employment or volunteer activities do not conflict with the conscientious performance. Wait, wait, wait. On this page, it says employee ensures that employment or service is not a prohibited activity. Correct. That sounds pretty mandatory. Again, because under the procedure, under the SOP, the burden was not on the employees. There was no negative consequence to the employees for the failure to... or for engaging in a prohibited activity that was an outside employment. Now... Prohibited activity, there was no sanction for engaging in prohibited activity? That seems unlikely. Well, there was nothing included in the SOP that applies to the employees, where the employees are now subject to these mandatory requirements that are described in Appendix 8 on page 809, which is the first page of the new draft directive from which the union's proposal were drafted or where it came from. For the first time in the general policy on page 808 and 809, it says, violation is subject to discipline up to and including termination. This prior... Discipline before for engaging in prohibited activity, weren't they? It doesn't say that in the policy. So the union would argue that, again, absent some malfeasance that would have a nexus to their workplace, the answer would be if they were working a non-prohibited activity that had been approved by the employer, that they would not be subject to discipline, certainly. All right. Ms. Neal? With respect to the time and attendance issue, I understand that there's been some discussion about whether the computer versus the paper is a big change or is a minimalist change. Well, that may not be a major change for an office worker. These employees that the union represents, they're not office workers for the most part. Many of them are working post out on the Capitol. They're out on the streets. Many of them do not have access to a computer. Did all of what you view as changes with respect to this time and attendance, did all of them require employees to do something that they were not previously required to do? I thought at least one of them was this is giving you an additional option, which isn't a change of a sort, but that at least raises a question whether a change that is favorable is automatically negotiable. The department may view the option to use a virtual time clock, I think that's what you're talking about, as favorable. But, again, for the employees, they want to know what are the circumstances under which they're expected to use a virtual time clock, what happens if they can't use the virtual time clock, issues of that kind. You have a group of employees who, again, do not use computers necessarily in their day-to-day operations, and they may not even have access to computers, again, except at certain times during the day while they're on break. So the proposals that the union has made are designed to address the need to now do certain things that had been previously printed out and handed to them on the computer. Previously, the burden, again, while employees had to certify their time, as the department admits, the prior proposal, the prior policy required that the supervisor printed everything out, gave it to the employee, required them. Now the directive reverses that burden. The employee has to find a computer, log in, and certify their time. That may not seem like a de minimis proposal or a non-de minimis change, and perhaps for an employee that sits at a desk all day, it's not, but for an employee who then has to search out a computer, find the time, get relief from a post, to go to that computer and do this time entry, it is more than a de minimis. It does place a greater burden on them than they had previously. Mr. Herrera made an argument that it's just not a rule about what you can do when you're off-duty. The outside employment stuff just doesn't have to do with conditions of employment. A, did they make that argument to the compliance board? And B, can you tell us anything about sort of like an argument that ought to have been made and either adopted or rejected? I don't recall that argument being made, frankly, and I think perhaps the reason is because of how outrageous that is. What the department is saying through its argument and through its proposal is that it's not a condition of employment what you do outside your job duties, but if you do it wrong, you might be subject to termination. That is sort of inconsistent in my mind with common sense, but it's also inconsistent with the FLRA law, which we did cite in our brief, that this is clearly a condition of employment. Criteria for when employees can work outside of their job with the government is a fairly straightforward working condition under the FLRA cases that we cited. Thank you. Thank you, Mr. Mead. Herrera, to wrap it up, we'll give you two final minutes here. Just very briefly, Your Honor. I wanted to just correct one thing with respect to the SOP, outside employment and the directive outside employment. Employees have always been subject to the rules of conduct for both of those, and that's found in your appendix at 210. Okay. Thank you. Thank you all, counsel. The case is as submitted. That concludes our session for this morning. All rise.